UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TELSCHE E. PAULSON, | Case No. 07-CV-3757 (PJS/JJK) |
| Plaintiff, | |
| v. | |
| TIMOTHY BELIVEAU; LAWRENCE MAAHS; WEST BAY CAPITAL, INC.; U.S. HOUSING SERVICES, LLC; AMERICAN ALLIANCE MORTGAGE GROUP, INC.; SHELLEY BELIVEAU; and AMERICAN ALLIANCE TITLE, LLC, | ORDER |
| Defendants. | |

Peter C. Hennigan and Eleasalo V. Ale, FAEGRE & BENSON LLP, for plaintiff.[1]

Jack E. Pierce, PIERCE LAW FIRM, P.A., for defendant Shelley Beliveau.

This matter is before the Court on two unopposed motions filed by plaintiff Telsche Paulson: (1) a motion for partial summary judgment against defendants Timothy and Shelley Beliveau[2] and (2) a motion for dismissal without prejudice of her claims against defendant Lawrence Maahs. For the reasons set forth below, the motions are granted.

---

[1] Hennigan and Ale are representing Paulson pro bono. The Court commends them on their extraordinarily thorough and careful work.

[2] Shelley Beliveau is now known as Shelley Milless. Because Beliveau was her surname during the time relevant to this action, the Court will refer to her using that name.

I.  BACKGROUND

The undisputed evidence described in Paulson's memorandum — and supported by appropriate citations to the affidavits, deposition transcripts, and other documents that make up the record — establishes Paulson's entitlement to the relief she seeks.  The Court will summarize that evidence only briefly here.

During the time relevant to this action, defendants Timothy and Shelley Beliveau, who were until recently a married couple, controlled numerous business entities through which they ran an equity-stripping scheme.  These entities — which include defendants West Bay Capital, Inc. ("West Bay"), American Alliance Mortgage Group, Inc. ("American"), U.S. Housing Services, LLC, and American Alliance Title, LLC — were merely alter egos for the Beliveaus. The Beliveaus had check-writing authority on all the corporate accounts, regularly commingled funds, routinely used corporate funds for personal expenses, and did not observe corporate formalities.

Paulson is an elderly woman who became caught up in the Beliveaus' scheme after Paulson found herself facing foreclosure proceedings in May 2004.  For many years, Paulson lived in and was the sole owner of a duplex located in South Minneapolis.  After losing her downstairs tenants, Paulson fell behind in her mortgage payments, and her lender began foreclosure proceedings.  At that time, the duplex was worth approximately $470,000, and Paulson had over $170,000 of equity.  One of the Beliveaus' entities — American — contacted Paulson, who eventually agreed to permit American to refinance her mortgage.

As it turned out, however, the Beliveaus and their agents arranged not for the refinancing of Paulson's mortgage, but, unbeknownst to Paulson, arranged for the sale of Paulson's house to

defendant Lawrence Maahs, a business associate of the Beliveaus. The Beliveaus hid the true nature of the transaction from Paulson, who at all times believed that she was merely refinancing her mortgage. The Beliveaus tricked Paulson not only into selling her home, but into entering a Contract for Deed with Maahs.

The sale generated $159,733.73 in net proceeds. Paulson never received a penny of this amount, however. Among the papers that Paulson was tricked into signing was a letter requesting that these proceeds be transferred to an "escrow account" belonging to another of the Beliveaus' entities, West Bay. The record shows that a large chunk of this money was used, in circular fashion, to finance Maahs's purchase of the duplex. The remainder of the money has since been dissipated by the Beliveaus. Essentially, the Beliveaus stole the closing proceeds from Paulson.

This, however, was apparently not enough for the Beliveaus. After the sale, the Beliveaus instructed Paulson to make payments to West Bay on what Paulson thought was her refinanced mortgage. Paulson complied with the instructions, dutifully making "mortgage" payments to the Beliveaus' company. In January 2006, without Paulson's knowledge, Shelley Beliveau arranged for Maahs to sell the duplex to Shelley Beliveau's sister and brother-in-law. Shelley Beliveau did not inform the buyers about Paulson's Contract for Deed, and the sale did not include an assignment of the Contract for Deed. As compensation for arranging this transaction between her business associate and her sister, Shelley Beliveau helped herself to a commission of nearly $100,000, representing approximately 20% of the sale price. This commission essentially wiped out the remaining equity in the home — that is, the equity that had been financed by the proceeds from the earlier sale that should have gone to Paulson. In

addition, by neglecting to assign Paulson's Contract for Deed, Shelley Beliveau extinguished what remained of Paulson's legal interest in the property.

After this second sale, the Beliveaus continued to collect "mortgage" payments from Paulson. In fact, in October 2006, Timothy Beliveau instructed Paulson to write her "mortgage" checks to Shelley Beliveau personally. The "mortgage" checks Paulson wrote to Shelley Beliveau were deposited into an account from which Beliveau paid for personal expenses. In all, Paulson made $12,100 in "mortgage" payments to Shelley Beliveau from October 2006 through May 2007, when government investigators informed Paulson of the Beliveaus' fraudulent activities.

## II.  ANALYSIS

### *A.  Motion for Partial Summary Judgment*

Paulson seeks summary judgment against the Beliveaus on her claims of unjust enrichment, conversion, and fraud. As noted, the Beliveaus have not contested any of the evidence that Paulson has submitted in support of her claims. Moreover, because the Beliveaus invoked their Fifth Amendment right against self-incrimination in response to most of Paulson's discovery requests, a jury would be entitled to draw adverse inferences against them. *See Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 111 n.1 (Minn. 1992). As outlined in Paulson's memorandum, the Beliveaus invoked the privilege in response to questions that directly accused them of taking the sale proceeds from the 2004 sale of Paulson's home, intentionally orchestrating the 2006 sale to extinguish Paulson's remaining legal rights in her home, and deceiving Paulson into believing that she was still obligated to make mortgage payments after the 2006 sale.

Under her claims of unjust enrichment and conversion, Paulson seeks a judgment in the amount of $159,733.73, representing the net proceeds from the 2004 sale. To prevail on a claim of unjust enrichment, a plaintiff must show that the defendant knowingly received something of value from the plaintiff under circumstances in which it would be inequitable for the defendant to retain the benefit without paying for it. *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 195-96 (Minn. Ct. App. 2007), *review granted* (Minn. Feb. 27, 2008). To prevail on a claim of conversion, a plaintiff must show that the defendant willfully interfered with the plaintiff's personal property without lawful justification, thus depriving the plaintiff of use or possession. *Williamson v. Prasciunas*, 661 N.W.2d 645, 649 (Minn. Ct. App. 2003). There is no dispute that the Beliveaus, either personally or through entities that were their alter egos, used deceptive means to obtain $159,733.73 in sale proceeds that rightfully belonged to Paulson. Paulson is entitled to summary judgment on her claims of unjust enrichment and conversion. *See* Fed. R. Civ. P. 56(c), (e)(2).

In her fraud claim, Paulson seeks judgment in the amount of $12,100, representing the amount of fraudulent "mortgage" payments made directly to Shelley Beliveau from October 2006 through May 2007, after the Beliveaus had succeeded in extinguishing Paulson's legal interest in her home. To prevail on a claim of fraud, a plaintiff must show that a defendant knowingly or recklessly made a materially false representation with the intent to induce the plaintiff to act, and that the plaintiff in fact was induced to act by the representation and suffered damages in reliance on the representation. *Florenzano v. Olson*, 387 N.W.2d 168, 174 n.4 (Minn. 1986). Intentional misrepresentation includes concealing or failing to disclose facts under circumstances that render the facts that are disclosed misleading. *M.H. v. Caritas Family*

*Servs.*, 488 N.W.2d 282, 289 (Minn. 1992). There is no dispute that the Beliveaus deceived Paulson into making mortgage payments that she was not obligated to make and that they were not entitled to receive. Paulson is entitled to summary judgment on her claim of fraud against the Beliveaus. *See* Fed. R. Civ. P. 56(c), (e)(2).

It is clear that the Beliveaus are jointly and severally liable for the full amount of Paulson's damages on her unjust enrichment, conversion, and fraud claims. *See* Minn. Stat. § 604.02, subd. 1(2) (mandating joint liability when two or more persons who are severally liable have acted in a common scheme or plan that results in injury); *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 185 (Minn. 1999) ("all who actively participate in any manner in the commission of a tort, or who procure, command, direct, advise, encourage, aid, or abet its commission, or who ratify it after it is done are jointly and severally liable for the resulting injury") (citation and quotations omitted). Paulson also asserts that West Bay, U.S. Housing Services, LLC, American, and American Alliance Title, LLC — all of whom are controlled by the Beliveaus and all of whom are in default — are also jointly and severally liable for the amount of the proceeds from the 2004 sale of her house. For that reason, the Court will wait to enter final judgment until such time as Paulson has renewed her motion for a default judgment against the defaulting defendants. *Cf. Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 433 (8th Cir. 1992) (noting "the problems of dealing with inconsistent damage determinations against jointly and severally liable defendants").

### B.  Motion to Dismiss

Paulson also moves to dismiss her claims against defendant Maahs without prejudice because Maahs has filed for bankruptcy. Although Maahs has not responded to the motion, the

Court understands from Paulson's counsel that Maahs would prefer the dismissal to be with prejudice. There is no conceivable reason why the dismissal should be with prejudice, however, and the Court will therefore grant Paulson's motion.

Maahs has filed a pleading entitled "Counterclaim and Crossclaims" that contains four claims, one of which is for indemnity and contribution. As the Court is dismissing Paulson's claims against Maahs without prejudice, Maahs's claim for indemnity and contribution is also dismissed without prejudice as moot. With respect to Maahs's three remaining claims — for deed reformation, note reformation, and mortgage reformation — it is not clear against whom Maahs is asserting these claims. Maahs also does not appear to be serious about pursuing his claims, as he evidently engaged in no discovery prior to the expiration of the deadline for taking discovery. The Court will therefore order Maahs to serve and file, within fifteen days after service of this order upon him, a letter stating whether he intends to pursue his remaining claims. If Maahs fails to serve and file the required letter, the Court will dismiss the claims without prejudice. If Maahs does file the required letter — and does express an interest in pursuing his remaining claims — then the Court will order that Maahs appear personally before the Court for a status conference.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for partial summary judgment [Docket No. 100] is GRANTED.

2. Plaintiff's motion to dismiss her claims against defendant Lawrence Maahs [Docket No. 84] is GRANTED.  Plaintiffs' claims against Maahs are DISMISSED WITHOUT PREJUDICE.

3. Defendant Lawrence Maahs's claim for indemnity and contribution against defendants U.S. Housing Services, LLC and Timothy Beliveau is DISMISSED WITHOUT PREJUDICE as moot.

4. Plaintiff is ORDERED to serve this order upon defendant Lawrence Maahs, using one of the methods of service described in Fed. R. Civ. P. 5(b)(2).

5. Defendant Lawrence Maahs is ORDERED to serve and file a letter stating whether he intends to pursue his remaining claims in this action.  This letter must be filed within fifteen days of the date on which this order was served upon him.  If defendant Maahs fails to comply with this paragraph, his remaining claims will be dismissed without prejudice.

Dated: December  1 , 2008          s/Patrick J. Schiltz
                                   Patrick J. Schiltz
                                   United States District Judge